## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE SCO GROUP, INC., *et al.*, | ) | Case No. 07-11337 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| ————————————— | ) | **Related Docket No.: 89** |

### MEMORANDUM OPINION[1]

The matter before the Court is the Motion of Novell, Inc. for Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code to Proceed with a District Court Action to (I) Apportion Revenue from SCOSource Licenses and (II) Determine SCO's Authority to Enter into SCOSource Licenses, Etc. (the "Motion") [D.I. 89]. The Motion matches the fundamental protection of the automatic stay against the necessity and timing of the adjudication of an issue that is essential in the administration of the bankruptcy case. After careful analysis of the facts and legal standards, the Court will grant the Motion, as set forth below.

## I. BACKGROUND

### A. The Debtor

On September 14, 2007, the SCO Group, Inc. ("SCO") and its affiliate, SCO Operations, Inc. (collectively the "Debtors"), filed voluntary petitions for relief under

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052, made applicable to contested matters by Bankruptcy Rule 9014.

Chapter 11 of the Bankruptcy Code.[2]  The Court ordered the cases to be jointly administered [D.I. 2].    Debtors are currently operating and managing their businesses as debtors in possession pursuant to §§ 1107 and 1108.

SCO is a provider of Linux software technology for distributed, embedded, network-based, and mobile systems, offering SCO OpenServer for small to medium sized businesses, branch offices and franchisees of Fortune 1000 companies, UnixWare, and SCO Mobile Server for enterprise applications and digital network services.  SCO Operations, Inc. is a Delaware corporation that is wholly owned by SCO Group and operates the research, development, sales and implementation of technology owned by SCO Group.  Declaration of Darl C. McBride, Chief Executive Officer, in Support of First Day Pleadings [D.I. 3].

## B.  The Novell Litigation

On January 20, 2004, SCO filed a lawsuit in Utah state court against Novell, Inc. ("Novell").  The case was removed by Novell to the United States District Court for the District of Utah ("the District Court") and is captioned *The SCO Group, Inc. v. Novell, Inc.*, Case No. 2:04-CV-00139 ("the Lawsuit").  The Lawsuit is one of a number of litigations involving SCO and the UNIX property rights.

The Lawsuit concerns a dispute over an Asset Purchase Agreement, dated September 19, 1995 (the "APA"), between Novell and SCO's predecessor, The Santa Cruz Operation,

---

[2] 11 U.S.C. §§ 101 et seq.  Hereinafter, references to statutory provisions by section number only are to provisions of the Bankruptcy Code, unless the context requires otherwise.

Inc. ("Santa Cruz").[3]   Pursuant to the APA, Novell transferred all of its UNIX SVRX

software licenses (the "SVRX Licenses") to Santa Cruz.  SCO subsequently entered into a

licensing campaign, "SCOSource," based on the SVRX Licenses.

In the Lawsuit, SCO asserted a claim for slander of title and interference with the

UNIX copyrights.  Novell, claiming that it retained all UNIX copyrights under the APA,

counterclaimed against SCO alleging breaches of the APA and seeking various forms of

relief.  SCO subsequently amended its complaint to include claims against Novell for

copyright infringement, unfair competition and breach of a technology licensing agreement.

Finally, in September of 2006, Novell filed an amended counterclaim alleging that SCO's

retention of funds from certain SCOSource licenses constituted breach of fiduciary duty,

breach of contract and conversion.

Both SCO and Novell filed multiple motions for summary judgment on their

respective claims and counterclaims.  On August 10, 2007, the District Court issued its

decision[4] denying SCO's motion for summary judgment and granting, in part, Novell's

motions for summary judgment.  The District Court concluded that: (1) Novell retained

ownership of the UNIX copyrights; and (2) Novell is entitled to royalties from certain

SCOSource licenses that the District Court determined to be SVRX Licenses.  The District

---

[3]  Santa Cruz was subsequently purchased by Caldera Systems, Inc. which changed its name
to SCO.

[4]  The learned District Court issued a thorough 105-page opinion carefully analyzing the facts
and law.  The District Court's mastery of the facts and law pertaining to the Lawsuit is a powerfully
important consideration in the Court's decision to lift the stay.

Court declined to impose a constructive trust until it could determine the appropriate amount of royalties to which Novell is entitled. As a result of the ruling, the District Court dismissed several of SCO's claims against Novell, including the original allegation of slander of title.

Following the District Court's decision, the parties were poised to begin a trial to resolve the following issues:[5] (1) the amount of the royalties to which Novell is entitled from certain SCOSource licenses that the District Court determined to be SVRX Licenses and any additional licenses that are determined to be SVRX Licenses; (2) whether SCO had the authority to enter into licensing agreements with Microsoft Corporations and Sun Microsystems; and (3) the amount of funds held by SCO that are subject to a constructive trust. The trial was scheduled to begin on Monday, September 17, 2007, until SCO filed for bankruptcy on Friday, September 14, 2007.

Novell filed the instant Motion on October 4, 2007 contending that relief from the automatic stay is warranted for cause. The Motion was set for hearing on November 6, 2007.

## II. JURISDICTION

This is a core proceeding which invests the Court with jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(G).

---

[5] The first two issues are hereinafter referred to as "the Liability Issues." The third issue is hereinafter referred to as "the Constructive Trust Issue."

## III.  ANALYSIS

### A.  The Law

The automatic stay is one of the most fundamental protections provided to the debtor under the Bankruptcy Code.  *Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection*, 474 U.S. 494, 503, 106 S. Ct. 755 (1986) *reh'g denied* 475 U.S. 1090, 106 S. Ct. 1482.  The purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor."  *St. Croix Condominium Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir. 1982).

However, the automatic stay is not meant to be absolute, and in appropriate instances relief may be granted.  *Wedgewood Inv. Fund, Ltd. v. Wedgewood Realty Group, Ltd. (In re Wedgewood)*, 878 F.2d 693, 697 (3d Cir. 1989).  Section 362(d)(1) of the Bankruptcy Code provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay–
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest. . . .

Except for lack of adequate protection, "cause" is not defined by § 362(d)(1).  Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test,

examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay. *See Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *In re Laguna Assocs. Ltd.*, 30 F.3d 734, 737 (7th Cir. 1994); *American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.),* 152 B.R. 420, 424 (D. Del. 1993).

The legislative history to section 362(d)(1) emphasizes the section's applicability to proceedings in another tribunal. "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977). Most courts follow this logic and apply an equitable balancing test to determine if cause exists to lift the stay to allow pending litigation to proceed or continue in another forum.

This Court has developed a three-prong balancing test to determine whether to grant relief from the stay:

> 1. Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;
>
> 2. Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and
>
> 3. The probability of the creditor prevailing on the merits.

*Izzarelli v. Rexene (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).

This Court has also considered general policies underlying the automatic stay when deciding whether to grant a motion to lift the stay. These policies, which have been outlined by the United States Court of Appeals for the Second Circuit, are:

> 1) whether relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves the debtor as a fiduciary; 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; 5) whether the debtor's insurer has assumed full responsibility for defending it; 6) whether the action primarily involves third parties; 7) whether litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; 10) the interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the parties are ready for trial in the other proceeding; and 12) impact of the stay on the parties and the balance of the harms.

*In re Sonnax Indus., Inc. v. Tri Component Prods. Corp.*, 907 F.2d 1280, 1287 (2d Cir. 1990).

## B. Application

Before analyzing the applicable law, the Court notes that the circumstances surrounding this case are unusual. In particular, the parties were on the door-step of beginning a five-day trial of complex issues when the Debtors filed their petitions. Another court has extensive knowledge of the facts and issues and has already made detailed findings.

As Novell pointed out in its motion papers, relief from the stay may be granted "when necessary to permit litigation to be concluded in another forum, particularly if the nonbankruptcy suit involves multiple parties or is ready for trial." Lawrence P. King, *Collier on Bankruptcy* 362.07[3][a] (15th ed. 2006).  Moreover, as noted above, the legislative history of section 362(d)(1) emphasizes the importance of allowing a case to continue in the original tribunal so long as there is no prejudice to the estate.  In applying the three-prong balancing test, considering the policies set forth in *Sonnax*, and finding that lifting the stay will not result in prejudice to the debtor and, therefore, it is appropriate to allow the trial to commence before the District Court.

### 1.  Application of the Three-Prong Balancing Test

The first factor the Court must consider in determining whether to grant relief from the automatic stay for "cause" using the three-prong balancing test is whether the lifting of the stay will result in harm to the debtor or the estate.  On the facts of this case, it does not appear that lifting the stay will unduly prejudice SCO.

The Debtors argue that allowing the trial to go forward would require the Debtors and their top management to focus all of their attention on the trial, to the detriment and exclusion of the reorganization efforts at a critical stage in the bankruptcy case.  The Court does not agree.  While the trial will likely require the attendance of SCO's primary officers and directors, SCO's attention to the Lawsuit will certainly not harm the estate.

-8-

SCO has separate litigation counsel who had already completed its extensive trial preparation prior to the petition date.  Thus, the trial preparation will not be burdensome to the Debtors.  In addition, because this bankruptcy case was filed on the eve of trial, both parties have already spent all of the necessary time and resources in preparation.[6]  The longer the trial is delayed, the more burdensome it is to both parties to ready themselves again.

The Debtors also argue that the estate will be greatly burdened if the Court permits the trial to proceed because the imposition of a constructive trust on funds that are presently property of the estate would effectively kill the chapter 11 case at its inception.  However, while the stay will be lifted in order to enable the District Court to determine the License Issues, this Court will determine whether a constructive trust is appropriate because it is the very essence of a bankruptcy court's jurisdiction to decide what is property of the estate.  *See In re Continental Airlines*, 138 B.R.442, 445 (the determination of what constitutes property of the debtor's estate is one of the core proceedings arising under Title 11 and is inherently an issue to be determined by the bankruptcy court).  As explained in *In re Flanigan*, 503 F.3d 171, 180-11(2d Cir. 2007):

> The effect of a constructive trust in bankruptcy is profound. While the bankruptcy estate is defined very broadly under § 541(a)(1) of the Bankruptcy Code to include all legal or equitable interests of the debtor, any property that the debtor holds in constructive trust for another is excluded from the estate pursuant to § 541(d), which states

---

[6] Debtors' trial counsel in the Lawsuit is being compensated on a contingency fee basis and therefore the expense of the trial will not unduly burden Debtors.

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest. . . becomes property of the estate. . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.
>
> 11 U.S.C. § 541(a)(1), (d), *see also Sanyo Elec., Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.)*, 874 F.2d 88, 93 (2d Cir. 1989). A constructive trust thus places its beneficiary ahead of other creditors with respect to the trust res.

Granting Novell stay relief will not result in the imposition of a constructive trust and, therefore, neither Debtors nor the estate will be prejudiced.

After determining whether relief from the stay will result in any harm to the debtor or the estate, the Court must balance that hardship with any hardship that the movant will suffer as a result of the stay being enforced. Here again, the Court finds the equities favor Novell. Hardship will result to Novell from denying relief, whereas the prejudice to SCO in denying relief, as discussed in the analysis of the first prong, is slight.

Novell has already prepared extensively for a trial that was to take place in September. Novell will be burdened by further delay and the fact that it will have to prepare again. Novell has already spent significant time and resources preparing for the trial in the Lawsuit. In addition, without a ruling on the Liability Issues, Novell's rights in these bankruptcy cases remains undetermined and the value of Novell's claim will remain a troubling issue for the Court, Novell and Debtors.

The Debtors urge this Court to follow the holding of the Bankruptcy Court for the Southern District of New York in *In re Northwest Airlines Corp.*, 2006 Bankr. LEXIS 477 (Bankr. S.D.N.Y. 2006) when balancing the hardships of the parties.  In *Northwest Airlines*, the court found that the burden to the estate greatly outweighed that of the creditor and denied a motion for stay relief because (1) the debtors were at a critical stage of the reorganization; (2) the trial would take management attention away from the reorganization; (3) the creditors had not shown any unusual prejudice; and (4) there was no "issue of public health or safety and no indication that the Movants' claims must be resolved before the Debtors can file a feasible plan."  *Id.* at *2.

The Debtors argue that the very same reasons to deny the Motion.  The Court, however, finds that the fourth point is not present here.  As Novell has pointed out in its papers, the Debtors simply cannot file a confirmable plan of reorganization until they know what liability they have to Novell.  The resolution of the issues remaining in the District Court litigation will assist the Debtors, not burden them.[7]

Finally, the Court must consider whether the movant has some probability of success on the merits of the pending litigation.  Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case.  *Int'l Business*

---

[7] An example of Novell's dilemma, and the Court's, arose recently in the bankruptcy cases. Debtors moved to sell substantially all of their assets.  Without a ruling on the Liability Issues it was unclear if the sale would adversely affect Novell's rights.  Debtors subsequently withdrew the sale motion, but the problem remains.

*Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 737 (7th Cir. 1991); *Rexene* 141 B.R. at 578.

Novell argues that "probability" has already solidified into actual success on the merits and the issues remaining are merely damage calculations.  The Debtors contend that Novell has failed to demonstrate that it will prevail on the other remaining issues: whether SCO had the authority to enter into licensing agreements with Microsoft Corporations and Sun Microsystems; and the amount of funds held by SCO that are subject to a constructive trust.  As the Court stated earlier, the stay will not be lifted and, therefore, the Constructive Trust Issue will not proceed in the District Court.  It is therefore not necessary to analyze whether Novell is likely to succeed on the Constructive Trust Issue.  As for the Liability Issues, the Court finds that there is sufficient evidence, including the District Court's decision,  to support a finding of a reasonable probability of success on the merits.

## 2.  Application of the *Sonnax* Policies

The Court has also considered several of the policies listed in *Sonnax* in reaching its decision.  Of particular importance to the Court are the specialized knowledge that the District Court has developed in presiding over the Lawsuit for four years, the interests of judicial economy and the expeditious and economical resolution of litigation and, as stated earlier, the fact that the parties are ready for trial.[8]

---

[8] Lifting the stay may also benefit Debtors who have made it clear that they will appeal the District Court's decision.  Until the Lawsuit can proceed to final judgment, the adverse ruling is a "Sword of Damocles" over Debtors.

It is undeniable that the Lawsuit involves many highly technical issues that the District Court has already addressed and mastered.  Debtors concede that it is unreasonable to expect this Court to spend a significant amount of time learning and resolving the Liability Issues when the District Court already has the knowledge required to adjudicate the Liability Issues. Moreover, to do so would be economically inefficient and  unnecessarily time consuming.

## IV.  CONCLUSION

After an analysis of the facts and equitable considerations, the Court concludes that relief from stay is justified.[9] An Order in accordance with the Memorandum Opinion is attached.

Dated: November 27, 2007

KEVIN GROSS, U.S.B.J.

---

[9]  The Court does not presume that the busy District Court will be able immediately to schedule the anticipated five day trial in the Lawsuit, and respectfully defers to the District Court on scheduling.