# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| The SCO GROUP, INC., *et al.*,[1] | : Case No. 07-11337 (KG) |
| | : (Jointly Administered) |
| Debtors. | : |
| | . Re Dkt. No. 1051 |

## ORDER (I) AUTHORIZING DEBTORS' ESTATES TO OBTAIN POSTPETITION FINANCING AND TO GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS AND USE CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 105, 363(c), 364(c), 364(e) and 507(b); (II) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; AND (III) GRANTING OTHER RELIEF

Upon the motion (the "**Motion**") dated February 17, 2010, of Edward N. Cahn, in his capacity as Chapter 11 Trustee ("**Chapter 11 Trustee**" or "**Trustee**") for The SCO Group, Inc., and SCO Operations, Inc. (collectively, "**Debtors**"), for the entry of an order (this "**Order**") authorizing the Debtors' estates to (i) obtain post-petition financing pursuant to sections 105, 363(c), 364(c), 364(e) and 507(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* ("**Bankruptcy Code**") in the form of a loan up to an aggregate principal amount of $2.0 million, subject to the terms and conditions of the Credit Agreement (as defined below), by entering into the Secured Super-Priority Credit Agreement among the Bankruptcy Estates of the SCO Group, Inc. and SCO Operations, Inc., by and through Edward N. Cahn, solely in his capacity as Chapter 11 Trustee, as Borrower, and Seung Ni Capital Partners, L.L.C., as Lender, and the other lenders from time to time party thereto (collectively, "**Lenders**"), subject to the terms and conditions set

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) The SCO Group, Inc., a Delaware corporation, Fed. Tax Id. #2823; and (b) SCO Operations, Inc., a Delaware corporation, Fed. Tax Id. #7393.

133091.01600/40186890v.2

forth herein and therein (the "**Credit Facility**"); (ii) grant a continuing first-priority Lien[2] pursuant to Bankruptcy Code sections 364(c)(2) and superpriority claims to Lenders pursuant to Bankruptcy Code sections 364(c)(1) and 507(b); (iii) modifying the automatic stay as set forth in this Order; and (iv) grant other related relief; and due and proper notice of the Motion having been given; and a final hearing to consider approval of the relief requested in the Motion having been held on March 5, 2010 (the "**Hearing**"); and upon the proceedings held before this Court and good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS:

A. On September 14, 2007 (the "**Petition Date**"), Debtors filed with this Court petitions for relief under chapter 11 of the Bankruptcy Code (the "**Bankruptcy Cases**"). The Debtors continued in the management and operation of their businesses and property as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108 until August 25, 2009 (the "**Appointment Date**") when this Court appointed Edward N. Cahn, Esquire as Chapter 11 Trustee. The Trustee has managed and operated the business as authorized by Bankruptcy Code sections 1106 and 1108.

B. This Court has jurisdiction over the Bankruptcy Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are Bankruptcy Code sections 361, 362, 363 and 364 and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"). Venue of the Bankruptcy Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Credit Agreement (as defined herein).

C. The Trustee requires the Credit Facility to, <u>inter alia</u>, finance the Debtors' ongoing working capital needs, fund Litigation related costs ("**Litigation Costs**") and to provide ongoing liquidity.

D. The Trustee is unable to obtain the required funds in the form of unsecured credit or unsecured debt allowable under Bankruptcy Code section 503(b)(1) as an administrative expense pursuant to Bankruptcy Code section 364(a) or (b). The Trustee is unable to obtain the post-petition financing that the Debtors' estates need on terms more favorable than those provided under the Credit Agreement.

E. The Trustee has provided notice of the Hearing and the relief requested in the Motion and have provided an opportunity to object to the entry of this Order and to participate in such hearing to (i) counsel to the Lenders; (ii) the Office of the United States Trustee; and (iii) all parties that have filed a request for notices in the Bankruptcy Cases prior to the filing of the Motion. Such notice constitutes sufficient notice under Bankruptcy Rule 4001.

F. Good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of Debtors' operations, provide liquidity for operations, and provide financing for the Litigation Costs. Accordingly, consummation of the Credit Facility is in the best interest of Debtors' estate.

G. The post-petition financing terms have been negotiated in good faith and at arm's length between the Trustee and the Lenders and the terms of such arrangements are fair and reasonable under the circumstances, reflect The Trustee's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair

133091.01600/40186890v.2

consideration.

H.  This Court concludes that entry of this Order is in the best interest of Debtors and their estates and creditors as its implementation will allow for the availability to Debtors of working capital which is necessary to sustain the operations of Debtors' existing businesses and preserve the going concern value of Debtors' businesses.

I.  Based upon the foregoing, and upon the record made before this Court at the Final Hearing, and good and sufficient cause appearing therefor,

THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:

1. The Motion is granted subject to the terms and conditions set forth in this Order. All objections to the Motion and to the entry of this Order have either been resolved as stated on the record at the Final Hearing, or are hereby overruled.

2. The Trustee, on behalf of the Debtors and their estates, is hereby authorized to (i) incur post-petition indebtedness by entering into the Credit Agreement with Lenders (as amended, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "**Credit Agreement**") in substantially the form annexed to the Motion, together with such non-material changes therein and additions thereto as the Trustee determines to be necessary or desirable (such determination to be conclusively evidenced by Trustee's execution thereof), and (ii) to comply with and perform all of the terms and conditions contained in the Loan Documents (as defined below); the provisions of the Loan Documents being hereby approved in all respects. The Credit Agreement, together with all agreements, documents and instruments delivered pursuant hereto or thereto or in connection herewith or therewith, including, without limitation, this Order, in each case, as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, are sometimes

collectively referred to herein as the "**Loan Documents**". The Trustee, on behalf of the Debtors and their estates, is authorized and obligated to repay amounts owing, with interest and any other charges, to the Lenders in accordance with and subject to the terms and conditions set forth in this Order and the other Loan Documents. The failure to reference or discuss any particular provision of the Loan Documents in this Order shall not affect the validity or enforceability of any such provision.

3. The Trustee, on behalf of the Debtors, is further authorized and obligated to pay all fees and expenses, including, without limitation, attorneys' fees of Lenders up to $50,000 in accordance with the terms of the Credit Agreement, provided any fees in excess of $50,000 shall be paid from the Litigation Proceeds. All loans made under the Credit Agreement and interest thereon under or in respect of this Order and the other Credit Documents are collectively referred to herein as the "**Loan Obligations**".

4. The Trustee shall have no personal responsibility, liability or obligations pursuant to the Loan Documents or this Order except in his capacity as the court appointed chapter 11 Trustee to the Debtors' Estates under the Bankruptcy Code.

5. Upon execution and delivery of the Loan Documents, the Loan Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms.

6. The Trustee, on behalf of the Debtors, is further authorized to enter into such non-material modifications and amendments to the Loan Documents as may be agreed upon in writing by the Debtors and the Lenders, without further order of this Court.

7. The Trustee, on behalf of the Debtors, is hereby authorized but not required to

133091.01600/40186890v.2

borrow funds and otherwise obtain extensions of credit for use in the operation of the Debtors' business, of up to $2.0 million (principal amount) in the aggregate outstanding at any one time, pursuant to the terms and provisions of the Loan Documents.

8. Upon payment of the Credit Facility, all liens granted under the Loan Documents, including, without limitation, this Order, automatically shall be extinguished and terminated.

9. As security for the Loan Obligations, Lenders are hereby granted a valid, binding, enforceable, perfected and continuing first-priority Lien (the "**Secured Liens**") in all of Debtors' right, title and interest in the Collateral.

10. In addition to the Secured Liens and other protections in favor of Lenders set forth in this Order, the Loan Obligations shall constitute allowed superpriority administrative claims in accordance with the provisions of Bankruptcy Code section 364(c)(1) over all administrative expenses in the Bankruptcy Cases of the kind specified in the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726 and 1114 ("**Superpriority Claims**"). Except as permitted pursuant to the Loan Documents, no costs or administrative expenses which have been or may be incurred in the Bankruptcy Cases, in any conversion of the Bankruptcy Cases pursuant to Bankruptcy Code section 1112 or otherwise or in any dismissed case, or in any other proceeding related to any of the foregoing, and no priority claims, including, without limitation, any other Superpriority Claims, are or shall be prior to, or on a parity with, (i) the claims of Lenders arising out of the Loan Obligations or any provision of this Order or (ii) the Secured Liens.

11. The Loan Obligations shall become due and payable on the Maturity Date, as provided in the Credit Agreement.

133091.01600/40186890v.2

12. Debtors shall use the proceeds of the Credit Facility and its other available funds, including Cash Collateral, solely as provided in the Loan Documents.

13. The Debtors shall repay any outstanding portion of the Credit Facility, in full, to the Lenders in immediately available funds on the Maturity Date, which is the earliest of (i) October 31, 2011, (ii) the date of acceleration of any outstanding portion of the Credit Facility; (iii) conversion of any of Debtors' chapter 11 cases to a case under chapter 7 of the Bankruptcy Code unless otherwise consented to in writing by the Lenders; (iv) dismissal of any of the Debtors' chapter 11 cases unless otherwise consented to in writing by the Lenders; and (v) confirmation of a Plan of Reorganization or liquidation, except to the extent that the proposed treatment of the Credit Facility in the Plan of Reorganization is acceptable to the Lender.

14. Notwithstanding anything to the contrary herein, the Loan Fee is hereby approved in accordance with the Credit Agreement and shall be payable solely from the Litigation Proceeds. The Debtors' estates obligation to pay the Loan Fee shall survive prepayment or payment of the Note and other Obligations under the Credit Agreement.

15. So long as the Obligations (as defined under the Credit Agreement) are outstanding, the happening of any Event of Default, as such term is defined in Article VII of the Credit Agreement, and during the continuance of any Event of Default, without further order of, application to, or action by, this Court, the Lenders: (a) may by notice to the Debtors declare that all the Lenders' portion of the Commitment be terminated, whereupon any and all obligations of the Lenders to make a portion of the Loan shall immediately terminate; and (b) may by notice to the Debtors, declare the Loan, all Basic Interest and Default Interest owed thereon and all other amounts and Obligations payable under the Credit Agreement in respect thereof to be forthwith due and payable, whereupon the Loan, all such interest and all such amounts and Obligations,

133091.01600/40186890v.2

shall become and be forthwith due and payable. In addition, subject solely to any requirement of the giving of notice by the terms of this Order, the Debtors shall have a period of five (5) business days in which to either cure the Default or obtain a scheduled court hearing with regard to the Default. In the event the Debtor fails to either cure the Default or obtain a scheduled court hearing with regard to the Default, the automatic stay provided in Bankruptcy Code section 362 shall be deemed automatically vacated without further action or order of this Court, and the Lenders shall be entitled to exercise all of their respective rights and remedies under the Loan Documents, including all rights and remedies with respect to the Collateral as provided in the Loan Documents; provided however, Lenders shall have no right to take any action with respect to the Litigation. Notwithstanding the foregoing provisions, upon the occurrence of an Event of Default, the Debtors shall have the right to use any cash available at such time for the payment of its fees and administrative expenses. Upon the occurrence and during the continuance of an Event of Default under the Loan Documents, payments of any amounts on account of the Secured Liens and the Superpriority Claims shall be subject and subordinate only to payment of all accrued and unpaid wages, salaries, benefits and severance and all taxes associated therewith for employees of the Debtors and the foreign subsidiaries of the Debtors (collectively, the "**Employee Carve-Out Amounts**"). In the event that the Lenders exercise any rights or remedies under the Loan Documents, the Lenders shall deposit all collections and proceeds of Collateral (as defined in the Credit Agreement) into a segregated account until all Employee Carve-Out Amounts are paid in full.

16. The Secured Liens are hereby deemed perfected, duly recorded, and no further notice, filing, recording or other act shall be required to effect such perfection. A copy of this Order, certified by Lenders, may be filed or recorded in the filing or recording offices in addition

133091.01600/40186890v.2

to or in lieu of financing statements, notices of liens and security interests and other similar documents, in the discretion of Lenders, and all filing offices are hereby directed to accept such certified copy of this Order for filing and recording. The automatic stay is modified to the extent necessary to implement the terms of this Order. The 10 day stay under Bankruptcy Rule 6004 is hereby waived.

17. The provisions of this Order shall be binding upon all parties in interest in the Bankruptcy Cases and their respective successors and assigns (including any other chapter 11 or chapter 7 trustee, or monitor, examiner or fiduciary, hereinafter appointed in the Bankruptcy Cases or in the context of any conversion or dismissal thereof) and inure to the benefit of Lenders, Debtor, and their respective successors and assigns; provided, however, that Lenders shall have no obligation to extend any financing to any other chapter 11 trustee or chapter 7 trustee or similar responsible person appointed in the Bankruptcy Cases.

18. Any plan of reorganization or liquidation filed in the Bankruptcy Cases (including, but not limited to, any amendment or modification of a plan of reorganization or liquidation, whether before or after confirmation) shall provide for payment and performance in full of all of the Loan Obligations in accordance with the terms of the Loan Documents and this Order. Nothing in the Loan Documents or this Order shall be construed as a consent by Lenders to, or an approval by Lenders of, the terms of any plan of reorganization or liquidation or any amendment or modification thereto.

19. Other than as expressly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary.

20. Except where expressly indicated in this Order to the contrary, in the event there

133091.01600/40186890v.2

is any irreconcilable inconsistency between the provisions of this Order and the Credit Agreement, the provisions of this Order shall govern.

21. At all times, this Court will retain exclusive jurisdiction to enforce and interpret this Order and the Loan Documents, including, without limitation, the enforcement of (i) the Secured Liens, (ii) Lenders' Superpriority Claims and (iii) the other rights and protections afforded to Lenders under this Order or under the other Loan Documents.

22. This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

Dated: March 5, 2010

SO ORDERED:

_____
UNITED STATES BANKRUPTCY JUDGE

133091.01600/40186890v.2