## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| The SCO GROUP, INC., *et al.*,<sup>1</sup> | : | Case No. 07-11337 (KG) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Hearing Date: 2/16/2011 at 4:00 p.m. (ET) |

## REPLY OF THE CHAPTER 11 TRUSTEE TO OBJECTION OF NOVELL, INC. TO SALE

Edward N. Cahn, Esq. (the "**Trustee**"), in his capacity as chapter 11 trustee for the above-captioned debtors (collectively, the "**Debtors**"), hereby files this reply (this "**Reply**") to the *Objection of Novell, Inc. to Sale* [Docket No. 1225] (the "**Novell Objection**"). In support of this Reply, the Trustee respectfully states as follows:

### SUMMARY OF RESPONSE

Novell objects to the sale of the Software Business[2] merely for the sake of objecting. The Novell Objection is irrelevant and without merit as it once again asserts that the Trustee cannot sell the Software Business without paying the piper – namely Novell – by assuming and assigning the Novell Santa Cruz APA (the "**1995 APA**") and paying Novell in excess of $3 million. It is evident that Novell has not even read the sale agreement with unXis, Inc. (the "**Sale Agreement**") or the Trustee's omnibus reply [Docket No. 1156] (the "**Omnibus Reply**") to, among other things, Novell's earlier reservation of rights with respect to the Sale Motion. The

---

[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) The SCO Group, Inc., a Delaware corporation, Fed. Tax Id. #2823; and (b) SCO Operations, Inc., a Delaware corporation, Fed. Tax Id. #7393.
[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Trustee's motion seeking, *inter alia*, authority to market, auction and sell substantially all of the Debtors' Software Business assets [Docket No. 1141] (the "**Sale Motion**").

Trustee does not seek to assume nor assign the 1995 APA, or any agreements with Novell, and therefore the Novell Objection is non-responsive to the Sale Motion and should be disregarded. Since the Sale Agreement does not impermissibly affect Novell's rights, Novell has no valid grounds on which to object to the sale – so Novell simply regurgitates prior objections, without application to the transaction contemplated by the Sale Agreement. Specifically, Novell incorrectly asserts that (i) the Debtors must assume and assign all of the "Original APA Agreements" (referred to herein as the 1995 APA) and (ii) the Debtors must pay the full amount of the Novell judgment and costs in order to assume the "Original APA". (*See* generally Novell Objection at ¶¶ 15-20). None of these statements are true.

The Trustee is fully aware of the rulings of the Utah District Court with respect to the disputes over the 1995 APA and the ownership of certain copyrights and has carefully crafted the Sale Agreement so that it comports with the District Court's findings. For all of the foregoing reasons, and as follows, the Trustee respectfully requests that this Court overrule the Novell Objection and enter the Sale Order.

## **BACKGROUND**

1. On August 9, 2010, the Trustee filed the Sale Motion seeking authority to sell the Software Business assets and for approval of bid procedures, which set forth therein, among other things, that

> …based upon the District Court's ruling(s), as set forth in the Memorandum Decision and the Findings and Conclusions…, the Trustee has determined in his business judgment to include within the Acquired Assets, (i) a sale of substantially all of the Debtors' Software Business assets and (ii) as applicable, a sub-license for any copyrights necessary for the Software Business that the Debtors do not own, including the copyrights Novell owns and the Debtors have the rights to use (license) as determined by the District Court in the Utah Litigation.

(Sale Motion at ¶ 13).

2. In response to the Sale Motion, Novell filed a reservation of rights [Docket No. 1151] (the "**Novell Reservation**"), in which Novell asserted that: (i) the transaction contemplated by the Trustee might require the Debtors to assume the 1995 APA and that the Debtors could not do so without curing monetary and non-monetary defaults; (ii) the Debtors were prohibited from selling property they do not own; and (iii) to the extent Assumed Contracts identify contracts with Novell, such assignment would be subject to Novell's consent. (*See* Novell Reservation at ¶¶ 4-6).

3. In the Omnibus Reply, the Trustee notes that issues asserted in connection with the Novell Reservation went to the transaction itself and did not need to be fully resolved in connection with this Court's approval of the Sale Procedures Order. Nonetheless, the Omnibus Reply addressed the issues raised by the Novell Reservation and specifically explained why the Trustee did not need to assume the 1995 APA in order to sell the Software Business assets. (*See* Omnibus Reply at ¶ 5).

4. On August 23, 2010, this Court entered the Sale Procedures Order [Docket No. 1161].

5. On October 15, 2010, the Trustee filed the *Notice of Cure Amounts in Connection with the Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 1184] (the "**Cure Notice**"), which set forth a list of executory contracts and/or unexpired leases that the Trustee *<u>might</u>* assume, assign and/or sell to a purchaser and, in connection with which, the Trustee caused the Debtors' claims agent to serve customized notices of proposed cure amounts upon contract counterparties. (*See* Docket No. 1186).

6. Novell filed an objection to the Cure Notice [Docket No. 1191] (the "**Novell Cure Objection**"), which sets forth the following grounds for Novell's objection: (i) the Cure Notice

was vague in certain respects; (ii) the cure amount listed by the Trustee was wholly inadequate; (iii) the "Novell Agreements" cannot be assumed and assigned without Novell's consent (and Novell does not consent); (iv) the "Novell Agreements" cannot be assumed and assigned separately; and (v) the Trustee had not produced any evidence of adequate assurance of future performance of the "Novell Agreements." (*See* generally Novell Cure Objection at ¶¶ 5-10).

7. Importantly, the executed Sale Agreement subsequently filed by the Trustee does not purport to assume and assign any agreements with Novell and, accordingly, no cure amounts would need to be paid to Novell in connection with the transaction contemplated by the Sale Agreement; nor does the Trustee need to prove adequate assurance of future performance with respect to Novell. The Novell Cure Objection is moot.

8. Thereafter the Trustee filed a notice of modified bidding procedures [Docket No. 1212] (the "**Modified Procedures**") which, among other things, set the Auction for January 19, 2011, established January 21, 2011 as the date by which Contract Parties had to be given notice of the Highest Bidder and made February 7, 2011 the objection deadline for objections by (i) Contract Parties whose contracts were being assumed and assigned under the executed Sale Agreement on the grounds that such parties had not received adequate assurance of future performance and (ii) parties in interest to the underlying transaction contemplated by the Sale Motion.

9. On January 24, 2011, the Trustee filed the *Notice of Filing of (I) Executed Asset Purchase Agreement and (II) Proposed Sale Order in Connection Therewith* [Docket No. 1216], which, among other things, identified unXis, Inc. ("**unXis**") as the Successful Bidder and attached (i) an executed Sale Agreement and (ii) a proposed sale order (the "**Sale Order**").

10. On February 7, 2011, Novell filed the Novell Objection.

**REPLY TO OBJECTION**

11. The Novell Objection relies on several fundamentally flawed statements and assumptions -

    a. "[T]he estates cannot engage in any material transaction without Novell's consent…" (Novell Objection at p. 2).

    b. "[A]ny buyer of the Business must have the Debtors assume and assign their Novell copyright licenses." (Novell Objection at ¶ 4).

    c. "unXis will need the copyright licenses to be able to operate the Business it is buying….Consequently, the Trustee must assume all of the Original APA Agreements (not just the licenses or even just the Original APA) or can assume and assign none of them." (Novell Objection at ¶ 15).

12. As a careful reading of the Sale Agreement makes clear, the Trustee does not intend to assume and then assign the 1995 APA to unXis, nor is such assignment required to transfer the Acquired Assets. Based upon the District Court's ruling and the course of conduct between the parties since 1995 (*See* William M. Broderick's declaration filed in support of the Sale Motion, Docket. No. 1233, filed contemporaneously herewith), it is clear that certain rights followed the assets acquired from Novell by the Debtors' predecessor -- impliedly and/or explicitly. The District Court unequivocally held that (a) Novell sold the Debtors the UnixWare business – i.e., the right to exploit and develop UnixWare, (b) Amendment No. 2 to the 1995 APA confirmed that the Debtors had the rights to license the UNIX technology and (c) it was undisputed that the Debtors would own any newly developed code and could obtain and would own copyrights to protect that code. (*See* Findings and Conclusions, ¶¶ 72, 79, 80, 123, 125, 126 and 130; Memorandum Decision, ¶ 11).[3] The District Court could not be more clear -

> The Court further finds that the copyrights are not required for SCO to exercise its rights with respect to the acquisition of UNIX and UnixWare technologies. SCO did not acquire the entire UNIX business from Novell, but only acquired the UnixWare business

---

[3] As noted in the Sale Motion, the Debtors have filed a notice of appeal from the adverse rulings in the Utah Litigation in the Tenth Circuit.

> while Novell retained substantial rights in the UNIX business. The undisputed evidence is that SCO did not need the UNIX and UnixWare copyrights in order to operate its UnixWare product business. Further, ownership of the copyrights is not required for SCO to protect its own code.

(Findings and Conclusions at ¶ 79). Consistent with the District Court's findings, the Trustee seeks entry of an order to permit the sale of the Debtors' rights to exploit and develop UnixWare and the Software Business – a right transferred under the 1995 APA.

13. With respect to any copyrights or other materials Novell may own (defined in the Sale Agreement at §1.40 as the "Licensed Properties"), the Debtors merely seek to continue to exercise the Debtors' rights as identified by the District Court and to "sublicense" those materials as the Debtors have done in the ordinary course of their business, with the knowledge of Novell and without its explicit consent, since the closing of the 1995 APA. Nevertheless, Novell now asserts that its consent is required *merely* to hold up the sale of the Software Business.

14. Pursuant to the Sale Agreement and the Sublicense Agreement, appended as Exhibit "C" thereto, the buyer, unXis, will have all of the same rights to operate the Software Business that the District Court found SCO has. The Sublicense Agreement will grant to unXis a perpetual, non-exclusive, royalty-free right and sublicense to use the Licensed Properties consistent with the ordinary course manner in which the Debtors have done so historically.

15. Finally, Novell does not have any overriding right to control these estates by withholding its consent to the sale transaction. The law is clear; pursuant to Bankruptcy Code section 363(b)(1), the Trustee "after notice and a hearing may use, sell or lease, other than in the ordinary course of business, *property of the estate. . .*" 11 U.S.C. § 363(b)(1) *(emphasis added)*. The Trustee only seeks to sell assets which are property of the Debtors' estates. To the extent the Debtors do not own an asset, the Trustee is not selling it. The Sale Motion and the Sale Agreement do nothing more. Novell's consent is not required.

16. Accordingly, pursuant to the Sale Agreement and the proposed Sale Order, the Trustee intends to transfer the assets acquired from Novell that it owns and to sublicense the Licensed Properties. The Trustee believes the evidence presented in connection with the Sale Hearing will support a finding that the Debtors have the right to transfer such assets and sublicense the Licensed Properties, and that the transaction with unXis should be approved by this Court.

WHEREFORE, the Trustee respectfully requests that this Court overrule the Novell Objection, enter the Sale Order and grant all related relief this Court deems just, proper and necessary.

Dated: February 13, 2011
Wilmington, Delaware

Respectfully submitted,

**BLANK ROME LLP**

/s/ Bonnie Glantz Fatell
Bonnie Glantz Fatell (No. 3809)
Stanley B. Tarr (No. 5535)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

*Counsel for Edward N. Cahn, Chapter 11 Trustee*