IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| The SCO GROUP, INC., *et al.*,[1] | : | Case No. 07-11337 (KG) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | **Re: Docket No. 1141** |

**ORDER UNDER 11 U.S.C. §§ 105(a), 363 AND 365 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 9014 (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' SOFTWARE PRODUCT BUSINESS ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363, (B) APPROVING ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365 AND (C) GRANTING RELATED RELIEF**

Upon the motion (the "**Sale Motion**") [Docket. No. 1141] of Edward N. Cahn, Esq. (the "**Chapter 11 Trustee**"), in his capacity as Chapter 11 Trustee for the above-captioned debtors (collectively, the "**Debtors**"), pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for an order authorizing and approving (a) the sale of substantially all of the Debtors' software product business assets (but excluding the Excluded Assets, hereafter, the "**Acquired Assets**")[2], and (b) the assumption and assignment of certain executory contracts in connection therewith; and the Court having reviewed and considered (i) the Sale Motion and all relief related thereto, (ii) any objections

---
[1] The Debtors and the last four digits of each of the Debtors' federal tax identification numbers are as follows: (a) The SCO Group, Inc., a Delaware corporation, Fed. Tax Id. #2823; and (b) SCO Operations, Inc., a Delaware corporation, Fed. Tax Id. #7393.
[2] All capitalized terms not otherwise defined in this Order have the meanings ascribed to such terms in the Sale Motion or the Asset Purchase Agreement, as applicable. In the event of any inconsistency between the use of capitalized terms in the Sale Motion and Asset Purchase Agreement, the Asset Purchase Agreement shall control.

133091.01600/40193087v.4

thereto, (iii) the terms of the agreement relating to the Acquired Assets, as described in and pursuant to the terms and conditions of that certain Asset Purchase Agreement dated as of January 19, 2011 (collectively with all schedules and exhibits thereto, and all ancillary agreements, the "**Asset Purchase Agreement**") by and between The SCO Group, Inc., as Seller (the "**Seller**"), and UnXis Inc. (the "**Purchaser**"), a true and correct copy of which is attached hereto as Exhibit A and (iv) the Court having considered the objections and/or reservations of rights filed by Oracle America, Inc., Novell, Inc., Receivable Management Services as agent for EMC Corp., Oracle USA, Inc., Canadian Nortel Group, Hewlett-Packard Company and an informal letter objection from Dinkumware, and informal comments from the Office of the United States Trustee, and (v) the Court having considered the Declarations in support of the Sale Motion filed by W. Bruce Comer of Ocean Park Advisors, William M. Broderick of the Debtors and Richard Bolandz of UnXis Inc., and the Reply of the Trustee to the Novell Objection, and (vi) the Court having heard the statements of counsel and the evidence presented in support of the relief requested by the Sale Motion at the hearing before the Court on March 2, 2011 (collectively, the "**Sale Hearing**"); and the Court having held a hearing on August 23, 2010 to consider the Sale Motion and in connection therewith having entered the *Order (1) Authorizing the Marketing, Auction and Sale of Substantially All of the Debtors' Software Business Assets Consistent with Form Asset Purchase Agreement and Free and Clear of All Liens, Claims and Encumbrances, (2) Authorizing Assumption, Assignment, and Sale of Certain Executory Contracts and Unexpired Leases, (3) Approving Bidding Procedures in Connection with Auction, (4) Establishing Sale Hearing Date and (5) Granting Related Relief* [Docket No. 1161] on the same day (the "**Bidding Procedures Order**"); and the Chapter 11 Trustee having served *Notice of Cure Amounts in Connection with the Assumption and Assignment of Executory*

*Contracts and Unexpired Leases* [Docket No. 1184] (the "**Cure Notice**") in accordance with the Bidding Procedures Order; and the Chapter 11 Trustee having served the *Notice of <u>Modified</u> Bidding Procedures in Connection with Auction and Sale of Substantially all of the Debtors' Software Business Assets Consistent with Form Asset Purchase Agreement and Free and Clear of All Liens, Claims and Encumbrances* [Docket No. 1212] on January 6, 2011 (the "**Notice of Modified Bidding Procedures**") as authorized pursuant to the Bidding Procedures Order; and the Court having jurisdiction to consider and determine the Sale Motion as a core proceeding in accordance with 28 U.S.C. §§ 157(b) and 1334; and due notice of the Sale Hearing and the Sale Motion having been provided, and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED**:

A. The Court has jurisdiction to consider the Sale Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334. The Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief sought in the Sale Motion are Bankruptcy Code sections 105(a), 363(b), (f), (l) and (m) and 365(a), (b) and (f) and Bankruptcy Rules 2002, 6004, 6006 and 9014.

C. As evidenced by the certificates of service filed with the Court, (i) proper, timely, adequate, and sufficient notice of the Sale Motion, the transactions contemplated thereby, the Bidding Procedures Order, the Cure Notice, the Notice of Modified Bidding Procedures, and the Sale Hearing has been provided in accordance with Bankruptcy Code sections 102, 105, 363, and 365 and Bankruptcy Rules 2002, 6004 and 9014; and (ii) no other or further notice of the

Sale Motion, the transactions contemplated thereby, the Bidding Procedures Order, the Cure Notice, the Notice of Modified Bidding Procedures, the Sale Hearing or the entry of this Order is required.

D.   On September 14, 2007 (the "**Petition Date**"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered.

E.   On August 25, 2009 (the "**Appointment Date**") this Court approved the appointment of Edward N. Cahn, Esquire as Chapter 11 trustee in these cases [Docket No. 900]. No official committee of unsecured creditors has been appointed to date. The Trustee has been performing his duties and operating the Debtors as authorized by Bankruptcy Code sections 1106 and 1108.

F.   A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to: (i) the Office of the United States Trustee (the "**OUST**"); (ii) known entities to have expressed an interest in an acquisition or sale transaction regarding the Acquired Assets since the Appointment Date; (iii) known persons holding a lien, claim, encumbrance or other interest in, to or against any of the Acquired Assets, including parties to executory contracts; (iv) applicable federal, state and local taxing authorities; (v) applicable federal, state and local governmental units; (vi) the Debtors' secured creditors; and (vii) all entities who have filed a notice of appearance and request for service of papers in the Debtors' bankruptcy cases pursuant to Bankruptcy Rule 2002.

G.   The offer of the Buyer to purchase the Acquired Assets is the highest and best offer received by the Debtors and the Chapter 11 Trustee after a period in which third

parties had a sufficient opportunity to seek information and enter into discussions or negotiations with the Debtors and the Chapter 11 Trustee concerning a sale of the Acquired Assets. The Debtors have marketed the Acquired Assets diligently, in good faith and in a commercially reasonable manner to secure the highest and/or best offer therefor. At the direction of the Court, the Acquired Assets were the subject of a robust marketing process, including an auction conducted on January 19, 2011. The sale process conducted by the Chapter 11 Trustee was non-collusive, fair and reasonable and conducted in good faith. This transaction must be approved and consummated promptly in order to maximize the value of the Seller' estates.

H. The terms and conditions of the Asset Purchase Agreement: (i) are fair and reasonable, (ii) valid, binding and enforceable, (iii) constitute the highest and best offer for the Acquired Assets, (iv) will provide a greater recovery for the Seller' creditors than would be provided by any other practical available alternative, (v) constitute reasonably equivalent value and fair consideration for the Acquired Assets, and (vi) are in the best interests of the Seller, their bankruptcy estates, creditors, and all parties in interest.

I. The Asset Purchase Agreement was negotiated, proposed and has been entered into by the parties in good faith, at arm's length and without collusion. The Purchaser has acknowledged that its entry into the Asset Purchase Agreement constitutes the definitive documentation contemplated by the Purchaser and Seller at the February 16, 2011 Sale Hearing, and that the Purchaser is satisfied with the Acquired Assets described in the Asset Purchased Agreement.

J. The Purchaser is a good faith purchaser in accordance with Bankruptcy Code section 363(m) and, as such, is entitled to all of the protections afforded thereby.

K.  The Chapter 11 Trustee, on behalf of the Debtors, has advanced sound business reasons and a valuable business purpose for executing, delivering and performing the Asset Purchase Agreement and to sell the Acquired Assets as set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' and the Trustee's business judgment to execute, deliver and consummate the Asset Purchase Agreement with the Purchaser and to perform the obligations thereunder. Such business judgment includes, but is not limited to, the fact that: (i) there is a significant risk of immediate and irreparable deterioration in the value of the Acquired Assets and the Debtors' remaining assets if the transaction is not consummated in the near future; (ii) the Asset Purchase Agreement constitutes the highest and best bid for the Acquired Assets; and (iii) the consummation of the Asset Purchase Agreement presents the best opportunity to realize the value of the Acquired Assets and the Debtors' remaining assets and avoid further decline and devaluation thereof.

L.  The Debtors and Chapter 11 Trustee may sell, transfer and assign the Acquired Assets pursuant to the Asset Purchase Agreement free and clear of all Liens, in accordance with Bankruptcy Code sections 105 and 363 and such transfer is authorized by this Order. All (i) holders of Liens and (ii) non-debtor parties who did not object, or who withdrew their objections, to the Sale Motion and the Cure Notice are deemed to have consented pursuant to Bankruptcy Code sections 363(f)(2) and 365(c).

M.  The Debtors and the Trustee have satisfied the requirements of sections 365(b) and (f) and the Purchaser has demonstrated adequate assurance of future performance and the Assumed Contracts to be assigned under the Asset Purchase Agreement may be assumed by the Debtors and assigned to the Purchaser.

N. The transfer of the Acquired Assets to the Purchaser does not and will not subject the Purchaser to any liability to creditors and equity security holders of the Debtors, other than those liabilities expressly assumed in the Asset Purchase Agreement, by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based in whole or in part, directly or indirectly, or any theory of law, including without limitation, any theory of antitrust or successor or transferee liability.

O. Neither the Seller nor the Purchaser has engaged in any conduct that would cause or permit the application of Bankruptcy Code section 363(n) to the Sale, including having the Asset Purchase Agreement voided.

## ACCORDINGLY, THE COURT HEREBY ORDERS THAT:

1. The Sale Motion is granted as set forth herein.

2. Any objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are overruled on the merits. Parties who did not object, or who withdrew their objections to the Sale Motion, are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2).

3. The Asset Purchase Agreement and all of the terms and conditions contained therein are approved and are binding upon the parties thereto.

4. The Debtors are authorized and directed, pursuant to Bankruptcy Code sections 105(a) and 363(b), to perform all of their obligations pursuant to the Asset Purchase Agreement and to execute such other documents and take such other actions as are reasonably necessary to effectuate the transactions contemplated by the Asset Purchase Agreement.

5. The sale of the Acquired Assets, pursuant to this Order and the Asset Purchase Agreement, will vest the Purchaser with all of the Seller' right, title and interest in the Acquired Assets and will be a legal, valid and effective transfer of the Acquired Assets pursuant to Bankruptcy Code sections 105, 363(b), 363(f), and 365(l), free and clear of any liens (consensual liens, non-consensual liens, and statutory liens), security interests, encumbrances and claims (as defined in Bankruptcy Code section 101(5)), to the fullest extent of the law, in each case whether secured or unsecured, choate or inchoate, filed or unfilled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown, whether arising prior to, on, or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "**Liens**"), provided that all such Liens attach to the net proceeds of sale of the Acquired Assets in the order of their priority, and with the same validity, priority, force and effect which such holder has prior to the sale of the Acquired Assets, subject to the rights, claims, defenses, and objections, if any, of the Debtors, the Trustee and all parties in interest.

6. Entry of this Order will result in and constitute authorization for the Seller as Sublicensor to enter into the Sublicense Agreement pursuant to which Purchaser as Sublicensee is granted a personal, nontransferable, nonexclusive, non-sublicenseable (except as provided in the Sublicense Agreement), royalty-free right and sublicense to use the Licensed Properties, as defined in the Asset Purchase Agreement, which shall include the copyrights owned by Novell, Inc., as determined in the Memorandum Decision and Order denying SCO's Renewed Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial and by

the Findings of Fact and Conclusions of Law of the United States District Court of Utah on June 10, 2010, in accordance with the Sublicense Agreement, including the right to modify and create derivative works of such Licensed Properties.

7. Subject to the provisions of Paragraph 5 of this Order, entry of this Order will result in and constitute, as of the Closing and Closing Date, the release and cancellation of any filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Liens against the Acquired Assets where releases of such instruments have not been delivered to the Debtors or the Chapter 11 Trustee prior to the Closing Date.

8. All entities which are presently or on the Closing Date may be in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date.

9. All persons or entities holding Liens in, to or against the Acquired Assets shall be, and they hereby are, forever barred from asserting such Liens against Purchaser and its successors and assigns, or against such Acquired Assets after Closing.

10. Subject to and conditioned on the Closing of the transactions contemplated by the Asset Purchase Agreement, at the direction of the Purchaser, the Seller hereby assumes and assigns the Assumed Contracts (as defined in the Asset Purchase Agreement) to Purchaser pursuant to Bankruptcy Code Sections 363 and 365. Purchaser shall be responsible for promptly satisfying any necessary findings of adequate assurance of future performance under such Assumed Contracts and for promptly satisfying any cure amounts associated with the same up to the Buyer's $50,000.00 Cure Limit. Seller shall be responsible for promptly satisfying any cure amounts associated with the Assumed Contracts in excess of Buyer's $50,000.00 Cure Limit. Buyer shall be permitted, up to one day prior to closing, to remove any contract from the list of

Assumed Contracts whereupon such contract shall remain with the estate and no cure amounts shall be due and payable in connection with this Order or sale of the software product business.

11. The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties thereto in accordance with the terms thereof without further order of this Court; provided, however, that any such modification, amendment or supplement is neither material nor changes the economic substance of the transactions contemplated hereby.

12. Except as otherwise provided in the Asset Purchase Agreement, the Acquired Assets shall be sold, transferred, and delivered to the Purchaser on an "as is, where is" and "with all faults" basis.

13. Until these cases are closed or dismissed, this Court shall retain exclusive jurisdiction (a) to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, and any waivers and consents thereunder; (b) to compel the Seller and the Purchaser to perform all of their respective obligations under the Asset Purchase Agreement; (c) to resolve any disputes, controversies or claims arising out of or relating to the Asset Purchase Agreement, including without limitation, issues pertaining to the Acquired Assets and Assumed Contracts; and (d) to interpret, implement and enforce the provisions of this Order.

14. This Order shall be binding upon (i) the Debtors and their estates, (ii) all creditors of, and holders of equity interests in, any Debtor and parties to all Assumed Contracts, (iii) all holders of Liens against or on all or any portion of the Acquired Assets, (iv) Novell, Inc., (v) the Purchaser, and (vi) all successors and assigns of any of the foregoing, including any trustees that may be appointed in any of the Debtors' bankruptcy cases.

15. The failure to include any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of this Court and the parties that the Asset Purchase Agreement be approved and authorized in its entirety.

16. This Order constitutes a final order pursuant to 28 U.S.C. § 158(a). ~~As provided by Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately. The provisions of Bankruptcy Rule 6004(h) staying the effectiveness of this Order for fourteen (14) days are hereby waived. This Court has found that time is of the essence in closing the transactions contemplated by the Asset Purchase Agreement and the parties to the Asset Purchase Agreement shall be authorized to close the sale as soon as possible consistent with the terms of the Asset Purchase Agreement.~*

17. Upon Closing, the transfer of Acquired Assets and Assignment of the Assumed Contracts: (a) shall be legal, valid and effective transfers of the Acquired Assets and assignments of the Assumed Contracts from the Debtors and their estates to the Buyer, (b) vest in the Buyer all right, title, and interest of the Debtors and their estates in and to the Acquired Assets, (c) constitute transfers for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of the United States, any State, territory or possession, of the District of Columbia, and (d) do not and will not subject the Buyer to any liability by reason of such transfers under any laws of the United States, any State, territory or possession, of the District of Columbia applicable to such transfers based in whole or in part, directly or indirectly, on any theory of law, including without limitation, any theory of successor or transferee liability.

18. With respect to Assumed Contracts with Hewlett-Packard Company ("HP"), the Court finds that (i) there are no cure amounts due and owing to HP, (ii) HP consents

to the assignment to the Purchaser of all of the agreements with HP referenced in that certain Release of UNIX Claims ("Release") dated as of August 15, 2003 executed by the Debtors and HP and all agreements with HP identified in the Asset Purchase Agreement with the Purchaser, and (iii) the assumption and assignment of any Assumed Contracts with HP that are governed by the Release are subject to the Release, and (iv) the Purchaser, and its successors and assigns, are and shall be bound by the terms and provisions of the Release. To the extent the Trustee rejects any executory contracts with HP, no such rejection negatively impacts HP's rights under the Release, and HP is entitled to all of the rights permitted by Bankruptcy Code section 365(n).

Dated: ~~February~~ MARCH 7, 2011

_____
The Honorable Kevin Gross
United States Bankruptcy Judge