**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| | Case No. 07-11337 (BLS) |
| TSG GROUP, INC., *et al.*, | |
| | Obj. Deadline: September 9, 2021 |
| Debtors. | Hearing Date: September 22, 2021 at 1:00 P.M. |

**OBJECTION OF DARL MCBRIDE TO THE**
**MOTION OF THE CHAPTER 7 TRUSTEE PURSUANT TO**
**FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER APPROVING THE**
**SETTLEMENT AND RELEASE AGREEMENT BY AND BETWEEN THE TRUSTEE**
**AND INTERNATIONAL BUSINESS MACHINES CORPORATION**

Darl McBride ("McBride") objects to the Motion of the Chapter 7 Trustee Pursuant to Fed. R. Bankr. P. 9019 for the Entry of an Order Approving the Settlement and Release Agreement by and between the Trustee and International Business Machines Corporation (the "Motion")[1]

## I.    INTRODUCTION

1.    The Motion to approve the Settlement and Release Agreement (the "Settlement Agreement") between the chapter 7 trustee and International Business Machines Corporation ("IBM") should not be approved. As is set forth below, a leading litigation funder, Omni Bridgeway Management (USA) LLC[2] (the "Purchaser") is willing to pay more for the claims against IBM. The Purchaser's proposed transaction provides greater benefit to the estate and the applicable stakeholders.

---

[1]    Docket index number ("D.I.") 1501
[2]    Or one of its affiliates.

## II.    BACKGROUND

### McBride's role

2.      McBride is the former chief executive officer of the debtors.[3] McBride is the second largest equity security holder of the parent debtor, TSG Group, Inc. ("TSG")[4] holding approximately 1.5 million shares. McBride is a creditor of debtor SCO Operations, Inc. ("SCO Operations").

### The debtors' business

3.      The debtors' core business focused on serving the needs of small-to-medium sized businesses and branch offices and franchisees of Fortune 1000 companies, by providing reliable, cost-effective UNIX software technology for distributed, embedded and network based systems.[5]

4.      The debtors also provided a full range of pre- and post-sale technical support for all of its products, primarily focusing on OpenServer and UnixWare. Additionally, debtors provided UNIX-based technical support services and consulting services.[6]

### The chapter 11 cases

5.      The debtors commenced these bankruptcy cases on September 14, 2007 (the "Petition Date").[7] The cases were jointly administered but not substantively consolidated.[8] The bankruptcy filings were precipitated, in significant part, by the misconduct of IBM.[9]

6.      On August 25, 2009, the current chapter 7 trustee was appointed as the chapter 11 trustee.[10]

---

[3]     D.I. 3, paragraph 1
[4]     Formerly known as "SCO Group, Inc."
[5]     D.I. 3, paragraph 8
[6]     D.I. 3, paragraph 8
[7]     D.I. 1
[8]     D.I. 25
[9]     D.I. 3
[10]    D.I. 900

**DIP financing**

7.      During the chapter 11 cases, the debtors obtained secured post-petition financing with super-priority administrative expense status (the "DIP Loan").[11] The DIP Loan appears to remain outstanding as the DIP Loan lender filed a post-conversion administrative expense claim in the amount of $2,248,218.11.[12]

**Sale of assets and retention of claims against IBM**

8.      On March 7, 2011, the Court entered an order approving the sale of substantially all of debtors' software business assets to unXis, Inc.[13]

9.      Following the sale, the debtors retained causes of action and other rights against IBM.[14]

**Conversion to chapter 7**

10.      On August 24, 2012, the Court converted the cases to chapter 7.[15] On August 28, 2012, the Court appointed the chapter 7 trustee.[16]

**The chapter 11 administrative claims**

11.      Upon conversion to chapter 7, the chapter 11 trustee filed a notice indicating there were approximately $3.7 million in unpaid post-petition claims incurred during the chapter 11 case.[17] Included in the chapter 11 claims is a secured and administrative claim in the amount of $2,248,218.11 related to the DIP Loan.[18] The DIP Loan continues to accrue interest.

12.      There does not appear to be any order establishing a bar date for chapter 11

---

[11]   D.I. 1084
[12]   Claim number 219; see also D.I. 1457, page 3
[13]   D.I. 1253
[14]   D.I. 1501, paragraph 8
[15]   D.I. 1439
[16]   D.I. 1443
[17]   D.I. 1457
[18]   Claim number 219; see also D.I. 1457, page 3

administrative claims.

### The attorney fee claim related to the IBM Litigation

13.     The proposed IBM settlement may trigger a 15% contingent fee claim by special counsel handling the IBM Litigation, Boies, Schiller & Flexner, LLP.[19] In addition, special counsel may be entitled to recover substantial reimbursable expenses.

### The filed and scheduled claims

14.     Following conversion to chapter 7, the chapter 11 claims agent filed a copy of the claims register as of August 28, 2012.[20] This claims register includes claims for both debtors as follows:

| | |
|---|---|
| Scheduled unsecured claims | $643,154.34 |
| Filed administrative claims | $12,410.59 |
| Filed priority claims | $50,190.79 |
| Filed unsecured claims | $99,432,353.03 |
| Expunged claims | ($457,925.69) |
| Withdrawn claims | ($1,360.16) |
| Total | $99,678,822.90[21] |

15.     Copies of the pre-conversion claims are not publically available and the Motion does not disclose information about the claims population of each debtor.

16.     Disclosure of accurate information concerning the break-down of the claims is required prior to the Court deciding the Motion so the Court may properly evaluate the competing proposals. Until this information is provided, the Court should defer consideration of the Motion.

### The IBM litigation

17.     The most significant, and possibly sole, remaining asset is the litigation claim

---

[19]  D.I. 941

[20]  D.I. 1444

[21]  Following conversion, the claims register on the Court's docket reflects claims totaling $2,608,530.79.  Most of these claims relate to the DIP Loan claim of $2,248,218.11.

against IBM (the "IBM Litigation"). The IBM Litigation was commenced by TSG, known at the time as Caldera Systems, Inc., against IBM. The case is pending before the United States District Court for the District of Utah (the "Utah District Court") and is captioned as *The SCO Group, Inc. v. International Business Machines Corporation*, Civil No. 2:03-CV-00294-DN (the "Utah Case"). IBM filed counterclaims against TSG in the IBM Litigation.

18.    The IBM Litigation involves claims related to the parties' project to develop a Unix-based operating system.

19.    On February 16, 2012, this Court entered an order approving a stipulation between the debtors and IBM which modified the automatic stay to permit IBM: (a) to defend the IBM Litigation and prosecute its counterclaims against TSG; and (b) to offset any judgment against IBM against any claim IBM may have against TSG subject to TSG's defenses to any setoff.[22]

20.    In February, 2016, the Utah District Court entered summary judgment in favor of IBM on TSG's remaining claims in the IBM Litigation.[23]

21.    On January 2, 2018, a panel of the Tenth Circuit Court of Appeal affirmed in part and reversed in part the Utah District Court's summary judgment in favor of IBM. *SCO Grp., Inc. v. Int'l Bus. Machs. Corp.*, 879 F.3d 1062 (10th Cir. 2018). The Tenth Circuit noted, *inter alia*, a reasonable jury could find IBM misappropriated SCO's labor, skills, expenditures or good will through fraud or deception. *Id*. at 1078. The effect of the Tenth Circuit's decision was to revive certain of TSG's claims against IBM.

22.    The IBM Litigation has significant value. IBM's 2020 annual report specifically discloses the IBM Litigation as a matter in which the "likelihood of material loss [to IBM] is at

---

[22]    D.I. 1396
[23]    Utah Case, D.I. 1159 & 1160

least reasonably possible."[24]

### The IBM proof of claim

23.     On April 4, 2008, IBM filed an unsecured, unliquidated proof of claim against the

debtors (the "Proof of Claim").[25] Although the Proof of Claim appears to be filed against both

debtors, the Proof of Claim relates to the counterclaims against TSG only. IBM does not appear to

have a claim against SCO Operations. IBM's Proof of Claim is unsecured and unliquidated. The

Proof of Claim relates to the pre-petition counterclaims which are defensive in nature. Some, or

all, of the counterclaims may lack validity.

### The 9019 Motion and Settlement Agreement

24.     The Motion seeks the approval of a Settlement Agreement[26] between the trustee

and IBM relating to the IBM Litigation and the Proof of Claim.

25.     The Settlement Agreement[27] provides, *inter alia*, for the following:

| | |
|---|---|
| Settlement payment by IBM | $14,250,000 |
| Releases provided by IBM | IBM releases the counterclaims and the Proof of Claim |
| Releases provided by trustee and the estates | (1) claims against IBM; (2) claims against Red Hat, Inc.; and (3) intellectual property claims against third parties |

26.     The Settlement Agreement is conditioned upon the Court's approval of the Motion.

27.     The Settlement Agreement does not provide a deadline for approval by the Court.

---

[24]   https://www.ibm.com/annualreport/assets/downloads/IBM_Annual_Report_2020.pdf, page 119-120

[25]   Claim 91
[26]   D.I. 1501-2, page 6
[27]   D.I. 1501-2, page 6

The lack of deadlines and termination rights provides the trustee and the Court an opportunity to fashion an appropriate procedure to insure there is no higher and better alternative transaction to the Settlement Agreement without the risk of IBM terminating the Settlement Agreement.

**The proposed higher and better transaction**

28.    The Purchaser proposes purchasing the claims against IBM from the bankruptcy estates for $14,500,000.  McBride will have the opportunity to take an interest in the transaction following the purchase.

29.    McBride believes the Purchaser will have completed its initial due diligence prior to, or shortly after, the hearing date. Subject to finalizing due diligence, obtaining final approval from its Investment Committee, and documenting the transaction, the Purchaser will be able to consummate the proposed transaction on a short timeframe.

## III.    RELIEF REQUESTED

30.    McBride respectfully requests the Court to defer decision on the Motion to permit the Purchaser to conclude its due diligence and for the trustee to propose a free and clear sale of the claims against IBM to the Purchaser pursuant to 11 U.S.C. § 363. Alternatively,  in  lieu  of deferring  decision  on  the  Motion,  McBride  respectfully requests  the Court deny the Motion or schedule an auction for the IBM Litigation claims.

## IV.    STANDARD

31.    Bankruptcy Rule 9019(a) provides "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. Proc. 9019(a).

32.    "[T]he decision whether to approve a compromise under Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc*., 211 B.R. 798, 801 (D.Del. 1997). "Under the

'fair and equitable' standard, [the court looks] to the fairness of the settlement to the other persons, i.e., the parties who did not settle." *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 645 (3d Cir. 2006).

33.    In evaluating the reasonableness of a proposed settlement, the Court should "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

34.    There are "four criteria that a bankruptcy court should consider in striking this balance: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of creditors." *Id*.

35.    A trustee is not required to champion a motion for approval of a settlement if circumstances change and the trustee no longer believes the settlement is in the best interest of the estate. *Martin*, 91 F.3d at 394.  A trustee's duties of good faith and fair dealing with the settlement party may conflict with the trustee's fiduciary relationship with all creditors of the estate that requires the trustee to maximize the value of the estate. *Id*.

36.    When such a conflict occurs, the trustee should inform the court of any changed circumstances since entry of the settlement agreement and the court will determine whether to approve the settlement. *Id*, see also *Fiy's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002) (deciding that the bankruptcy court should examine the settlement in light of the present circumstances).

## V.    ANALYSIS

### A.    The Purchaser's proposed transaction is higher and better.

37.    Circumstances have changed following the execution of the Settlement Agreement

because there is an opportunity for a higher priced and better transaction. In particular, the Purchaser's proposal is facially higher and better for the estate because it provides greater proceeds to the estate.

### Probability of success

38.    The first *Martin* factor involves an analysis of the probability of success in the litigation. In choosing between the IBM settlement and the Purchaser's proposed transaction, this factor is neutral because both transactions will eliminate the litigation risk for the estates. The IBM settlement fully resolves the litigation and the Purchaser's transaction shifts the litigation risk to the Purchaser.

### Difficulties in collection

39.    The second *Martin* factor involves an analysis of the likely difficulties in collecting any judgment. In choosing between the IBM settlement and the Purchaser's proposed transaction, this factor is neutral because both transactions will eliminate collection risk. Both the IBM settlement and the Purchaser's transaction will result in almost immediate payment to TSG which eliminates collection risk.

### Complexity, delay and expense of litigation

40.    The third *Martin* factor involves an analysis of the complexity, delay and expense of litigation. This factor is neutral in choosing between the IBM settlement and the Purchaser's transaction. Both transactions result in elimination of expense and delay by providing for nearly immediate payment to the estate.[28]

### Paramount interests of creditors

41.    The fourth *Martin* factor requires consideration of the paramount interests of the

---

[28]    The trustee will likely incur fees objecting to claims following consummation of either transaction.

creditors and parties-in- interest.[29] This factor favors the Purchaser's proposed transaction over the IBM settlement.

42.    The Purchaser's offer is facially higher and better because it provides a payment to the estate of $14,500,000 which is greater than the IBM settlement payment of $14,250,000. The Purchaser's proposal is also facially better because it does not release Red Hat, Inc, and other third parties as required by the IBM Settlement Agreement.[30]

43.    The release being provided by IBM to the estate is illusory or of little value. IBM's Proof of Claim is unsecured and unliquidated. The Proof of Claim relates to the pre-petition counterclaims which are defensive in nature. Some, or all, of the counterclaims may lack validity.

44.    For example, IBM asserted counterclaims related to statements made by TSG during the course of the IBM Litigation. TSG has a motion for summary judgment pending in the IBM Litigation which seeks to dismiss these counterclaims based on, *inter alia*, absolute or qualified litigation privilege and IBM's lack of damage.[31] IBM also asserted counterclaims related to a general public license. TSG has a motion for summary judgment pending on these counterclaims which shows there was no breach or misconduct with respect to the general public license.[32]

## VI.    CONCLUSION

45.    The Settlement Agreement is not in the best interests of the estates and should not be approved. The Purchaser's proposal provides a greater recovery, and better result, for the estates.

---

[29]    To the extent a transaction may result in full payment to creditors, the interests of the equity security holders, like McBride, should be considered. *In re RNI Wind Down Corp.*, 348 B.R. 286, 298-299 (Bankr. D. Del. 2006).

[30]    Settlement Agreement, section 3.1

[31]    Utah Case, D.I. 776, 820 (seeking dismissal of IBM's second, third, fourth and fifth counterclaims)

[32]    Utah Case, D.I. 777, 794 (seeking dismissal of IBM's sixth, seventh, and eighth counterclaims)

46.    As a result, McBride respectfully requests the Court to defer consideration of the Motion to permit the trustee to propose a sale of the IBM Litigation claims to the Purchaser. Alternatively, if the consideration of the Motion is not deferred, McBride respectfully requests that the Court deny the Motion or schedule an auction for the Litigation Claims.

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

*s/William H. Schorling*

William H. Schorling (DE. I.D. 4055)
Mark Pfeiffer (*pro hac vice* motion to be submitted)
919 North Market Street, Suite 990
Wilmington, DE 19801
Telephone:  (302) 552-4200
Facsimile:  (302) 552-4295
Email: william.schorling@bipc.com

*Attorneys for Darl McBride*

Dated:    September 9, 2021